IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LEWIS & CLARK OUTDOORS, INC., an
Arkansas Corporation                                           PLAINTIFF

            v.          Civil No. 07-5164

L.C. INDUSTRIES, INC., an
Illinois Corporation                                           DEFENDANT

O R D E R

Now on this 11th day of June, 2008, come on for consideration the following motions:

     *   **Defendant L.C. Industries, Inc.'s Motion To Dismiss Or Transfer** (document #9);

     *   **Plaintiff's Motion To Conduct Jurisdictional Discovery** (document #18); and

     *   **Defendant L.C. Industries, Inc.'s Renewed Motion To Dismiss Or Transfer** (document #23),

and from said motions, and the responses thereto, the Court finds and orders as follows:

     1.   Plaintiff's Complaint alleges that defendant violated the Lanham Act, **15 U.S.C. §1125(a)**; committed common law trademark infringement; violated the Arkansas Deceptive Trade Practices Act, **A.C.A. §4-88-101 et seq.**; engaged in unfair competition; and obtained fraudulent federal trademark registrations.  Plaintiff seeks declaratory, compensatory, and injunctive relief, "enhanced damages," costs, and attorney's fees.  The First Amended Complaint

adds a count for tortious interference with business expectancy and a claim that defendant has abandoned certain intellectual property rights.

2.   Defendant moves to dismiss, asserting that plaintiff has failed to state a claim upon which relief can be granted, that venue is improper, and that this Court does not have personal jurisdiction over it.  Alternatively, defendant asks the Court to transfer this matter to the Northern District of Illinois pursuant to **28 U.S.C. §1404(a)**.

3.   The Court will not devote much time to an analysis of defendant's **12(b)(6)** argument insofar as it goes to plaintiff's intellectual property claims, inasmuch as that argument relies on evidence outside the Complaint.  It is axiomatic that in reviewing a motion to dismiss pursuant to **Rule 12(b)(6),** the Court is called upon to determine whether the complaint is sufficient, not whether the plaintiff can prove its allegations.  The rule on such review is that the complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations.  Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

**Krentz v. Robertson Fire Protection District, 228 F.3d 897, 905 (8th Cir. 2000).**

-2-

When this high standard is applied, the Court believes it would be inappropriate to dismiss plaintiff's intellectual property claims pursuant to **Rule 12(b)(6)**.

4.  Closer analysis is merited as to the motion to dismiss the claim of tortious interference with business expectancy asserted in the First Amended Complaint.  Defendant makes three arguments:

\*  that plaintiff had only a hope, as opposed to a true business expectancy, with regard to the terms it thought would be in the settlement agreement with another company, Mahco, Inc. ("Mahco") when it was reduced to writing;

\*  that mere delay, as opposed to a termination of the relationship or expectancy, cannot support a tortious interference claim; and finally,

\*  that any interference was not improper because it arose out of a prior settlement agreement between defendant and Mahco.

The first and last of these arguments depend on matters outside the First Amended Complaint, and, for the reasons stated in ¶3, cannot be addressed at this time.  The second argument, however, presents an issue of law which the Court may address at this stage of the proceedings.

Under Arkansas law, a cause of action for tortious interference with contractual relationship or business expectancy requires proof of four elements:

-3-

*     the existence of a valid contractual relationship or business expectancy;

*     knowledge of the relationship or expectancy by the tortfeasor;

*     intentional and improper conduct which induces a breach or termination of the relationship or expectancy; and

*     resulting damages.

**K.C. Properties of N.W. Arkansas, Inc. v. Lowell Investment Partners, LLC**, --- Ark. ---, --- S.W.3d ---, 2008 WL 659825 (2008).

The First Amended Complaint alleges that plaintiff had filed suit against Mahco over the use of a confusingly similar trademark, and that when mediation of that case was planned, defendant's president Michael Smerling ("Smerling") threatened to "spoil" any deal that was reached.  It further alleges that settlement was reached on December 10, 2007, which would require Mahco to discontinue use of plaintiff's name or mark, but that when plaintiff and Mahco tried to reduce the settlement to writing, Mahco said it could not agree to carry out certain terms of the agreement because of terms "imposed" on it by defendant. Plaintiff alleges that this delayed the signing of the formal settlement agreement with Mahco until April 3, 2008, which is alleged to have delayed both the payment of settlement monies and the approval of a service mark application sought by plaintiff.

-4-

When taken as true, as they must be on a motion to dismiss, these allegations paint a picture of intentional conduct that interfered with the timely completion of a settlement agreement between plaintiff and Mahco, to plaintiff's damage.  The Court cannot take cognizance of the evidentiary document said by defendant to disprove plaintiff's claim, but focuses, instead, on defendant's contention that delaying settlement as opposed to terminating it altogether is not sufficient to support the cause of action.  The Court will not interpret the concept of "breach" so narrowly.  A delay of four months in consummating a settlement may, under some circumstances, constitute a breach of the agreement to settle.  The Renewed Motion To Dismiss will, therefore, be denied.

5.  In support of its personal jurisdiction argument, defendant offers the Declaration of Michael Smerling, averring that defendant does not manufacture any products in Arkansas, does not maintain offices or have employees in Arkansas, and does not have a license to do business in Arkansas.  Smerling does, however, concede that in the first ten months of 2007, defendant sold product in Arkansas by direct sales, through retailers, and through licensed internet distributors.  Based on Smerling's Declaration, defendant contends that it does not have constitutionally-sufficient minimum contacts with the State of Arkansas to support personal jurisdiction over it.

Plaintiff responds with the Declaration of James Potts, its president, in which Potts avers to numerous additional contacts between defendant and the State of Arkansas, particularly several "threatening phone calls" made to him -- in Arkansas -- by Smerling. Plaintiff contends that defendant's contacts in Arkansas "are not random, fortuitous, or attenuated" and do not result from the unilateral activity of persons other than defendant, but rather are "purposeful, intentional, expected, continuous, and systematic."

6.   In addition to its response to defendant's initial motion to dismiss, plaintiff filed the First Amended Complaint, and moved to conduct limited discovery as to jurisdictional facts. The First Amended Complaint beefs up the allegations of the Complaint, and -- as noted above -- adds a claim for tortious interference with "the business relationship, expectancies, and settlement agreement" between plaintiff and Mahco.

The motion to conduct jurisdictional discovery alleges that plaintiff has "recently been made aware of new facts which indicate that [defendant's] contacts with Arkansas are more plentiful than those asserted . . . and which directly relate to Plaintiff's claim for tortious interference. . . ." Plaintiff seeks leave to conduct "limited jurisdictional discovery" and to file a supplemental brief on the issue of personal jurisdiction.

Defendant opposes the motion to conduct jurisdictional

-6-

discovery, arguing that plaintiff has failed to show what jurisdictional facts it expects to discover, and reiterating its arguments that the claims are subject to dismissal. This last contention having been resolved adversely to defendant, the Court will address the propriety of jurisdictional discovery in the situation here presented.

7.   As the Eighth Circuit has explained,

> the party seeking to invoke the court's jurisdiction bears the burden of proof on that issue. . . . [but] jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. If the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.

**Dakota Industries, Inc. v. Dakota Sportswear, Inc.**, **946 F.2d 1384, 1387 (8th Cir. 1991)**(internal citations omitted). Evidence outside the pleadings may be considered on the issue of personal jurisdiction. **Romak USA, Inc. v. Rich**, **384 F.3d 979, 983 (8th Cir. 2004).**

The Court believes that in the instant case, it is preferable to make a preliminary disposition of the jurisdictional issue on the submissions of the parties, subject to later revision upon contrary proof. It reaches this conclusion because (a) the evidence now before it is sufficient to allow a reasoned

-7-

preliminary determination of the issue, and (b) it appears that "jurisdictional discovery" would in great measure overlap discovery as to the substantive aspects of the case, making it unlikely that efficiencies for the parties would be achieved by allowing two layers of discovery.

8.   The basic requirements for personal jurisdiction are summarized in **Burlington Industries, Inc. v. Maples Industries, Inc.**, **97 F.3d 1100 (8th Cir. 1996):**

> a federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state, and by the due process clause of the Fourteenth Amendment.  We have previously recognized that the Arkansas long-arm statute authorizes jurisdiction over foreign corporations to the fullest extent allowed by constitutional due process.
>
> Due process requires "minimum contacts" between the non-resident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice.  The defendant's conduct and connection with the forum state must be such that defendant should "reasonably anticipate being haled into court there."
>
> Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.
>
> Where specific personal jurisdiction over a non-resident is asserted, due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities.

(Internal citations omitted.)

**Burlington** sets out five factors to be considered in evaluating a challenge to personal jurisdiction:

* the nature and quality of the defendant's contacts with Arkansas;

* the quantity of defendant's contacts with Arkansas;

* the relationship between defendant's contacts with Arkansas and the cause of action asserted against it;

* the interests of Arkansas in providing a forum for plaintiff to resolve its dispute with defendant; and

* the convenience of the parties.

The first three of these factors are the most important, with the last two being of lesser importance.

9.   The case at bar appears to involve an issue of specific rather than general personal jurisdiction, and the materials now before the Court reflect the following with regard to whether defendant purposely directed its activities at residents of the State of Arkansas:

(a) Smerling averred that between January 1, 2007, and October 31, 2007, sales of its LEWIS N. CLARK products were made in three ways in Arkansas.  It shipped product directly to five customers in Arkansas for a total of $6,198.37;  it shipped product directly to "four national retailers" in Arkansas for a total of $5,795.44; and authorized internet-based retailers sold product worth $1,154.77 in Arkansas.

(b)  Potts averred that in November 16, 2007, he found defendant's products on sale in several retail stores in Arkansas. He further averred that "an archive web search" by one of plaintiff's employees revealed that defendant has used the internet to sell its products nationwide since 1998.

(c)  Potts also averred that on September 11, 14, 19, and 25, and October 3, 2007, Smerling made "threatening phone calls to me in Arkansas," saying he would take legal action if plaintiff did not comply with certain demands regarding the use of the marks at issue in this case, and stating that plaintiff's use of the marks was hurting defendant's business with Wal-Mart and Sam's Clubs.

(d)  Plaintiff offers a copy of a Complaint filed by defendant against Mahco, Inc., in the United States District Court for the Northern District of Illinois.  In it, defendant alleges that it sells products under its LEWIS N. CLARK name "throughout the United States," including through "large retailers such as Wal-Mart."

These averments -- when given the inferences favorable to plaintiff -- support the view that defendant is purposefully directing its sales activities at Arkansas residents, and doing so in a substantial way by selling its products through Wal-Mart and Sam's Club, both of which are huge retail operations.  In addition, the sales admittedly made by defendant through other channels in Arkansas can hardly be characterized as the type of

-10-

random or fortuitous sales which will not support personal jurisdiction under the teachings of **Burger King Corp. v. Rudzewicz**, **471 U.S. 462 (1985).** Add to this the alleged telephone communications, and the Court concludes that plaintiff has made out a prima facie case that defendant has purposefully directed its activities at residents of the State of Arkansas.

10.  Without unduly belaboring the situation, the Court will also note that there appears to be a direct relationship between defendant's contacts with Arkansas and the intellectual property causes of action asserted against it in the Complaint and the First Amended Complaint.  The gravamen of the statutory and common law trademark infringement and unfair competition claims set forth in both documents is the allegation that defendant is using marks that are confusingly similar to plaintiff's in order to trade on plaintiff's goodwill.

These claims arise out of defendant's sales of its product, and to the extent those sales were made in Arkansas, they are directly related to the claims for trademark infringement and unfair competition.

11.  As far as the interest of Arkansas in providing a forum for plaintiff to resolve its dispute with defendant, little need be said except that a state "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflected by out-of-state actors." **Burger King**, *supra*,

-11-

**471 at 473.**

12.  Defendant offers very little on the issue of convenience of the parties, except that set forth in connection with its motion to transfer under **28 U.S.C. §1404(a)**.  Defendant alleges that "[i]t is extremely inconvenient for LCI to proceed in the Western District of Arkansas" because it "is not located in nor does it have any presence in the State of Arkansas."  Such vague generalizations carry little weight in legal analysis.

13.  When the Court takes the foregoing factors into account, and views them in the light most favorable to the plaintiff, resolving all factual conflicts in favor of the plaintiff, it finds that plaintiff has made out a prima facie case that this Court has personal jurisdiction over defendant.  This is, as noted above, a preliminary finding, subject to revision should the proof at trial, or at an evidentiary hearing upon the conclusion of discovery, so justify.  For this reason, the Court finds that the motion to dismiss should be denied.

14.  Defendant also contends that venue is not proper in this case, pursuant to **28 U.S.C. §1391**.  Under this statute, in a case where jurisdiction is not founded solely on diversity, a corporate defendant may be sued in a judicial district where it resides.  A corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Since plaintiff has established a prima facie case of

personal jurisdiction over defendant, it follows that venue is proper.

15.   Finally, the Court returns to the issue of convenience, now in connection with defendant's motion to transfer.  The rules regarding a transfer of venue under **28 U.S.C. §1404(a)** are succinctly summarized in **<u>Viasystems Technologies Corp., L.L.C. v. Forest City Commercial Development, Inc.</u>, --- F.Supp.2d ---, 2008 WL 2064971 (E.D. Mo. 2008)**:

> In general, federal courts [] give considerable deference to a plaintiff's choice of forum, and thus the party seeking a transfer under §1404(a) typically bears the burden of proving that a transfer is warranted.  The party seeking transfer is required to make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed.  A transfer which would merely shift the inconvenience from one party to another should not be granted.

(Internal citations and quotation marks omitted).

The sketchy inconveniences alluded to by defendant in its motion do not come close to satisfying the standard by which the Court must judge a **§1404(a)** motion, and the Court finds that defendant has not met its burden of proof on this issue.

**IT IS THEREFORE ORDERED** that **Defendant L.C. Industries, Inc.'s Motion To Dismiss Or Transfer** (document #9) is **denied.**

**IT IS FURTHER ORDERED** that **Plaintiff's Motion To Conduct Jurisdictional Discovery** (document #18) is **denied.**

**IT IS FURTHER ORDERED** that **Defendant L.C. Industries, Inc.'s**

-13-

**Renewed Motion To Dismiss Or Transfer** (document #23) is **denied.**

   IT IS SO ORDERED.

                                    /s/ Jimm Larry Hendren
                              JIMM LARRY HENDREN
                              UNITED STATES DISTRICT JUDGE