IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| LEWIS & CLARK OUTDOORS, INC., an Arkansas corporation,<br><br>Plaintiff / Counter-Defendant,<br><br>v.<br><br>L.C. INDUSTRIES, INC., an Illinois corporation,<br><br>Defendant / Counter-Plaintiff. | Case No. 07-5164<br><br>Judge Robert T. Dawson<br><br>Magistrate Judge James R. Marschewski |

**L.C. INDUSTRIES, INC.'S *DAUBERT* MOTION FOR EXCLUSION
OF EXPERT TESTIMONY OF MONTY MYERS**

Defendant/Counter-Plaintiff L.C. Industries, Inc. ("LCI"), by and through its attorneys, Hall Estill and Freeborn & Peters LLP, move this Court, pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence, to enter an Order that excludes all expert testimony, reports, and opinions of Plaintiff/Counter-Defendant Lewis & Clark Outdoors, Inc.'s ("Plaintiff") expert witness, Monty Myers. Mr. Myers expert report and a complete transcript of his May 18, 2009 deposition are attached hereto as Exhibits A and B, respectively.

## INTRODUCTION

Plaintiff has disclosed Monty Myers of Eureka Software Solutions to testify in this case. Mr. Myers purportedly has expertise in the areas of computers, software design, software, search optimization, and other areas related to computer and Internet technologies. Mr. Myers is proffered by Plaintiff to testify on the following subjects:

- "historical internet advertising and marketing efforts of the parties"
- "search engine optimization tactics employed"

- "confirmation of [LCI's] first use of reference to the historic expedition on the internet"
- "confirmation as to dates of the fictitious character 'Lewis N. Clark' by LCI on the internet"
- "methodology for creating hits on web search engines employed"

(Pl.'s Expert Disclosures at 2, attached hereto as Exhibit A.)

Essentially, Mr. Myers wants to expound upon "customer highjacking", of which no evidence has been provided, based on years-old internet searches conducted by his clients, of which no record exists and which cannot be recreated and results provided by search engines for which he has no idea of the inner-workings. What is actually going on here, which is precisely excluded by the Federal Rules of Evidence, is that Mr. Myers has a goal of "proving" bad conduct by LCI and stretches every resource available to him to get to that disingenuous point.

The methodology employed by Mr. Myers for creating hits on web search engines is highly suspect. The substance of Mr. Myers' testimony in this regard is twofold. First, that LCI's LEWIS N. CLARK mark would show up higher in search results than expected – a consequence he deemed to be "customer hijacking." This is problematic because: 1) there is absolutely no evidence of customer highjacking in this case; and 2) Mr. Myers lacks any and all expertise with regard to marketing or "customer hijacking." Second, Mr. Myers purports to offer opinions relating to a series of Google <u>Product</u> Searches he performed using Plaintiff's mark, and that LCI must be doing something improper because its mark shows up at the top of certain search results. This testimony is additionally problematic because Mr. Myers' search logic is flawed, irrelevant and speculative, it cannot be duplicated, and there is no real scientific methodology being performed – essentially, Mr. Myers performed flawed searches in the present day and attempts to speculate about what searches would have yielded in the time period relevant to this case, without any information or evidence regarding how the particular search engines

2

work or how those search results came to be. In essence, Mr. Myers simply wishes to take unrelated and unverifiable "facts" cultivated through unreliable and unscientific "methods" and smash them together into opinions that reflect poorly on LCI.

As discussed below, Mr. Myers completely fails to meet the basic standards to which experts are held under the Federal Rules of Evidence. Because of the many deficiencies in his work, LCI respectfully requests that the Court exclude the expert reports and testimony of Mr. Myers pursuant to *Daubert* and Rule 702.

## ARGUMENT AND AUTHORITIES

### I. THE LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY.

The admissibility of an expert's opinion is governed by Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliably to the facts of the case.[1]

Over the last fifteen years, the Supreme Court has issued an important series of opinions addressing the standard for the admissibility of experts and the obligations of the trial courts in applying them. *See Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

In *Daubert*, the Supreme Court provided a non-exhaustive list of factors for determining whether expert testimony is sufficiently reliable to be admitted into evidence, including: (1)

---

[1] Rule 702 was amended in 2000 in response to the *Daubert* decision and the cases applying *Daubert*. See Comments to Federal Rule of Evidence 702.

whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *see also Kumho Tire*, 526 U.S. at 141 (holding that *Daubert's* factors apply to testimony based on technical and specialized knowledge, not just scientific knowledge). Additional relevant factors include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Chism v. CNH America LLC*, No. 2:07CV00150 JLH, 2009 WL 890524, at *1 (E.D. Ark. Mar. 30, 2009).

Under *Daubert*, the trial court is charged with acting as a "gatekeeper" to make the preliminary determinations necessary to exclude "junk science." *See Daubert*, 509 U.S. at 589-90; *Kumho Tire*, 526 U.S. at 147-48; *Joiner*, 522 U.S. at 142. The trial court's "special obligation" to determine the relevance and reliability of an expert's testimony ensures accurate and unbiased decision-making by the trier of fact. *Kumho Tire*, 526 U.S. at 147. In discharging this duty, the Supreme Court has emphasized the "importance of *Daubert's* gatekeeping requirement ... to make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

When defending against a *Daubert* challenge, many often do not want the trial court to look closely at what the expert has done and so fall back on the well-worn but erroneous arguments that consideration of the expert's conclusions are taboo, and that challenges to the details of the expert's methods or opinions go to the weight of the testimony rather than its

4

admissibility. Both of these defenses fail. The Supreme Court in *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), put to rest the first assertion by making the point that "conclusions and methodology are not entirely distinct from one another." The second point is easily dismissed also by the case law and commentators. As Robert J. Shaughnessy stated in an article in the Fall, 2003 issue of *Litigation* magazine, the Supreme Court's command in *Daubert* that trial courts act as evidentiary "gatekeepers" repudiates the argument that it is an issue of weight. Shaughnessy wrote:

> By commanding attention to the reliability and "fit" of expert testimony, and by insisting that trial courts act as evidentiary gatekeepers as to such testimony, the Supreme Court effectively repudiated the canard that challenges to the details of an expert's methods or opinions inevitably went to the weight rather than the admissibility of the opinion.... *Daubert* instructed trial courts to take a hard, deep look at proffered expert opinion, and most federal judges have taken that direction quite seriously.

The Eighth Circuit "has been consistently loyal to the language of *Daubert*" and Rule 702. *Baxter v. Robinette Co.*, No. 5:04CV00222, 2005 WL 5988679, at *5 (E.D. Ark. Nov. 29, 2005). In applying *Daubert*, the Eighth Circuit provides that expert testimony must satisfy three requirements in order to be admissible: (1) evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact (the basic rule of relevancy); (2) the proposed witness must be qualified to assist the finder of fact; and (3) the proposed evidence must be reliable or trustworthy in an evidentiary sense so that if the finder of fact accepts the evidence as true it provides the assistance the finder of fact requires (the basic rule of reliability). *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

The role of a trial court is not to evaluate the conclusions or findings of an expert, but to ensure that the expert's methodology is generally based on principles that are tested and accepted

5

in his profession. *Riley v. Target Corp.*, No. 05-00729, 2006 WL 1028773, at *4 (E.D. Ark. Apr. 13, 2006); *Polski v. Quigley Corp.*, 538 F.3d 836, 840 (8th Cir. 2008); *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 296-97 (8th Cir. 1996). The court has an affirmative duty to bar unreliable or unhelpful evidence from the courtroom, and must separate opinions based on "good grounds" from "subjective speculation that masquerades as scientific knowledge" *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001). An opinion is not admissible simply because a purported expert offers it. *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001).

## II. MONTY MYERS' TESTIMONY, REPORTS, AND OPINIONS ARE NOT ADMISSIBLE.

Plaintiff should be barred from making any reference to, or introducing any testimony from Mr. Myers because: (1) he has no expertise relating to the subject matter of his testimony regarding marketing or "customer hijacking"; (2) his Google Product Search results cannot be duplicated or recreated, and there is no evidence that his methodology is accepted by experts in the field; (3) his testimony is entirely speculative; (4) he is merely posing as a scientific expert without applying any real methodology; and (5) the methodology he does apply is seriously flawed.

### A. No Expertise Relating to Subject Matter of Testimony.

In offering his opinions in this case, Mr. Myers stretches far beyond his expertise in software and makes judgments on marketing and "customer hijacking" via search results, all without any supporting quantitative analysis whatsoever.

In the Eighth Circuit, an expert is an expert is unqualified to testify before a jury if his opinion is "not sufficiently reliable to assist the jury in understanding the evidence." *Anderson v. Raymond Corp.* 340 F.3d 520, 523 (8th Cir. 2003) (holding that plaintiff's expert was neither an

expert in the engineering of the stand-up lift trucks that he was testifying about, nor had he ever operated or seen a stand-up lift truck before the case). Specifically, an expert witness is unqualified when they have no personal knowledge about the subject matter on which they offer testimony. *Id.* Allowing Myers to opine on marketing and "customer hijacking" via search results – particularly when there is absolutely no evidence of "customer highjacking" that has been shown by Plaintiff in this case -- would be giving him license to testify about matters well outside of his area of expertise and engage in pure speculation under the guise of "expertise." Therefore, Myers' expert testimony must be excluded.

Qualifications in one area do not render an expert qualified to give opinions in another area of expertise. Expert testimony should be excluded when an expert's qualifications, even when extensive, are not related to the subject matter on which he offers an opinion. *See, e.g., Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001); *Jenkins v. Arkansas Power & Light Co.*, 140 F.3d 1161, 1165 (8th Cir. 1998) (excluding testimony from an expert in reservoir management when offered to discuss accident reconstruction in a case about a diving accident; although the expert was qualified in the field of reservoir management, he was not qualified to opine as an expert on accident reconstruction merely because the accident at issue occurred in a reservoir).

Here, Mr. Myers is simply a computer software professional. Citation of the scientific method, as Mr. Myers has done in his report, does not make one a scientist.[2] He has no business giving opinions on marketing, marketing campaigns, "customer hijacking," or anything of that ilk.[3] Accordingly, the Court should not allow Mr. Myers to testify to opinions that he is not qualified to give. *Riley v. Target, Inc.*, No. 4:05CV00729 JLH, 2006 WL 1028773, at *5 (E.D.

---

[2] Ex. A at p. 3.
[3] Myers Dep. 41, ll. 16-19; 43, ll. 15-19.

Ark. Apr. 13, 2006). Moreover, even areas where Mr. Myers may have a claim to expertise should be excluded from any testimony as the evidence and methodologies used by Mr. Myers are so lacking as to make his opinions laughably unreliable.

**B.    Google Product Search Results Cannot Be Duplicated Or Replicated.**

Another glaring problem with Mr. Myers' proposed testimony is the simple fact that none of his search results can be verified or duplicated. As stated by Mr. Myers in his deposition, "I cannot go do a search back in 2007." (Myers Dep. 209, ll. 3-5). Mr. Myers testified that he first learned of the "customer highjacking" problem (defined by Mr. Myers as not the actual highjacking of customers, but search results of search engines pointing to LCI instead of his client[4]) through anecdotes shared with him by his client's attorney and employees of his client, Mr. Darrell Potts and Mr. Jim Potts, that internet search engine results were pointing to LCI's, not Plaintiff's, products.[5] Google Products search engine updates its search terms on a constant basis.[6] Even though Plaintiff's mark may not have turned up in Mr. Myers' precise Google Product Search results in 2007, the same may or may not be true a year later, months later, days later, or even today. Moreover, Mr. Myers' method for conducting the searches is also flawed, as he did not employ quotation marks in a consistent manner in conducting his searches for particular phrases or names, when he could remember if he used quotes at all.[7] Furthermore, Mr. Myers claims that he used his expertise to examine the "source code" for the web pages he reviewed, but cannot recall any particular code that didn't manifest itself as visible on the web page as having an impact on search engines.[8] He has no knowledge of the differences between

---

[4] Myers Dep. 138, ll. 14 – 139, l. 23.
[5] Myers Dep. 65, l. 24 – 66, l. 12; 97, l. 22 – 98, l. 7.
[6] Myers Dep., 37, ll. 1-6.
[7] Myers Dep. 108, l. 3 – 109, l. 2; 100, l. 15 – 101, l. 19; 84, ll. 14 – 22; 149, ll. 3 – 11. In fact, an employee of Mr. Myers' own client, Mr. Jim Potts, testified that for Internet searches on search engines such as Google he has always placed quotation marks around the search terms. [J. Potts Dep. 70, ll. 16-19; 71, ll. 17-19]
[8] Myers Dep. 146, l. 22 – 147, l. 10.

Google and Google Product Search, including no knowledge of what information or data, if anything, his client has submitted to Google for their listings.[9] He also only "seems" to recall seeing his client's products show up in a Google Product search at all.[10]

One of *Daubert's* reliability factors is the ability of a test to be duplicated, producing the same or substantially same results when successively performed under the same conditions. *See Daubert*, 509 U.S. at 595; *Samuel v. Ford Motor Co.*, 96 F. Supp. 2d 491, 494 (D. Md. 2000). "If an expert fails to document his tests such that they cannot be duplicated, then it would be reasonable to question the reliability of those tests." *Nucor Corp. v. Bell*, No. 2:06-CV-02972-DCN, 2008 WL 4442571, at *6 (D.S.C. Jan 11, 2008); *see also Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 688 (8th Cir. 2001) (testing is inadequate if unable to duplicate). Accordingly, because Plaintiff cannot go back and duplicate his search results from 2007, they are unreliable evidence and his testimony should be excluded.

### C.    Speculative Opinions.

Mr. Myers' testimony is also entirely speculative. Mr. Myers has zero expertise or evidence related to how Google's searches actually are conducted (Plaintiff did not subpoena Google or any other search engine company), and has no evidence regarding any data files submitted by LCI to Google, resulting in the fact that his opinions regarding this search results are entirely speculative.[11] Armed with zero facts and pure guesswork, Mr. Myers is using his non-duplicative Google Product Search results from 2007 to conclude that LCI must have improperly submitted search terms to Google that resemble Plaintiff's marks in order for Plaintiff's mark to not turn up in those search results.[12] Mr. Myers has no basis for this opinion –

---

[9] Myers Dep. 137, l. 21 – 138, l. 6.
[10] Myers Dep. 132, l. 7 – 134, l. 12.
[11] Myers Dep. 36, ll. 10-17; 37, ll. 1-6; 78, ll. 10-18; 114, ll. 8 – 13; 123, l. 5 – 124, l. 17; 137, l. 8 – 138, l. 6.
[12] Myers Dep. 157, l. 1 – 158, l. 11; 212, ll. 8-12.

no evidence of how the terms were entered by Google, or submitted by third parties to Google, or how Google's search engine would actually produce such results.[13]

The court has an affirmative duty to bar unreliable or unhelpful evidence from the courtroom, and must separate opinions based on "good grounds" from "subjective speculation that masquerades as scientific knowledge" *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001). "Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis." *J.B. Hunt Transp.*, 243 F.3d at 444 (internal quotations omitted).

Further, the Eighth Circuit has expressly held that the kind of unsupported speculation contained in Myers' report should not be admitted as expert testimony. *Pro Service Auto. v. Lenan Corp.*, 469 F.3d 1210, 1215-16 (8th Cir. 2006) (affirming exclusion of expert testimony when he provided no testing or analysis to support his opinion); *Peitzmeier*, 97 F.3d at 297 (affirming exclusion because expert's "concepts are unfinished and untested, and have not been subject to peer review" and testimony would be "wholly speculative."); *Jaurequi v. Carter Mfg. Co.*, 173 F.3d, 1076, 1084 (8th Cir. 1999) (expert "provided no basis for us to believe that his opinions are anything more than unabashed speculation.").

Mr. Myers' opinions and his "bases" for them amount to rank conjecture and wishful thinking, without any approved or vetted methodology or underlying evidence to support them. Accordingly, his testimony should be excluded.

### D.    No Real Methodology Employed.

Mr. Myers' testimony represents everything that Daubert and Rule 702 were designed to prevent. One quick glance at the opinions he purports to offer in this case reveals that he is

---

[13] Myers Dep. 123, l. 5 – 124, l. 17; 36, ll. 10-17; 37, ll. 1-6; 78, ll. 10-18; 114, ll. 8 – 13; 123, l. 5 – 124, l. 17; 137, l. 8 – 138, l. 6.

merely posing as a scientific expert based on his computer software background, and is not applying any real methodology that is capable of being tested, verified, or has been accepted by experts and practictioners in the field.

The Supreme Court has held that all experts, regardless of their area of expertise or type of testimony, must have a coherent methodology to support their findings. *Kumho Tire Co. v. Carmichael*, 526 U.S. 579, 592-94 (1993); *see also Pro Service Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1215-16 (8th Cir. 2006); *Jaurequi v. Carter Mfg., Co.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (excluding expert testimony where proffered expert had no support for his testimony); *Papadopoulos v. Fred Meyer Stores, Inc.*, No. C04-0102RSL, 2006 WL 1375074, at *2 (W.D. Wash. May 17, 2006) (excluding testimony where "[n]o methodology is identified or applied and. [the] 'analysis' is the type of subjective, conclusory approach that is barred under *Daubert* because it cannot reasonably be assessed for reliability").

When an expert's opinion is "so fundamentally unsupported that it can offer no assistance to the jury," it must be excluded. *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924 (8th Cir. 2001) (internal citation omitted). Such is the case here. Myers "used little, if any, methodology beyond his own intuition." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000). Myers' opinion appears to be based more on an "instinctive reaction to the materials . . . provided to him than on any testable hypothesis. *See Johnson v. SJP Mgmt., LLC*, No. 07-5545, 2009 WL 367539, at *13 (E.D. Pa. Feb. 12, 2009); *Bethea v. Bristol Lodge Corp.*, No. 01-0612, 2002 WL 31859434, at *5 (E.D. Pa. Dec. 18, 2002) (same); *see also Smith v. BMW N.A., Inc.*, 308 F.3d 913, 921 (8th Cir. 2002) (excluding expert testimony where methodology employed was "'clearly flawed'"); *Watec Co. Ltd. v. Liu*, No. CV 00-10893 FMC (RNBx), 2002 WL 34373489,

at *2 (C.D. Cal. May 21, 2002) (excluding expert report and testimony where methodology produced a "biased and fatally flawed report").

Mr. Myers' searches cannot be duplicated. The searches he was informed of by his client cannot be duplicated. He did not conduct searches in any consistent or testable manner. He takes as a given "customer highjacking" occurring for which there is no evidence. He has no knowledge of how the underlying search engines actually work in order to properly conclude whether or not LCI was involved in any form of search term manipulation. He lacks any expertise or training in marketing or economic proof of "customer highjacking." His opinions amount to a sham and a shell game and, accordingly, they should be excluded.

## CONCLUSION

Accordingly, for all of the reasons set forth above, this Court should enter an Order that excludes all expert testimony, reports, and opinions of Monty Myers at trial pursuant to *Daubert* and Rule 702.

Dated:  June 29, 2009

Respectfully submitted,

L.C. Industries, Inc.

/s David L. Ter Molen
_____
Curtis E. Hogue, Bar # 80061
HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.
75 N. East Ave., Ste. 402
Fayetteville, AR  72701
Phone: (479) 973-5200 / Fax: (479) 973-0520

Robert P. Fitz-Patrick, OBA #14713
HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 400
Tulsa, OK  74103-3708
Phone (918) 594-0400 / Fax (918) 594-0505

Jennifer L. Fitzgerald
David L. Ter Molen
John C. Hammerle
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois  60606
Phone: (312) 360-6000 / Fax: (312) 360-6596

**ATTORNEYS FOR DEFENDANT, L.C. INDUSTRIES, INC.**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been filed and served electronically on this 29th day of June, 2009 through the CM/ECF system upon the counsel listed below by electronic mail and via first class U.S. Mail.

Terry W. Tippens
Dennis D. Brown
Fellers, Snider, Blankenship, Bailey & Tippens, P.C.
321 South Boston, Suite 800
Tulsa, Oklahoma  74103-3318
Email: TTippens@fellerssnider.com

Joseph P. McKay
Friday, Eldredge & Clark
Attorneys At Law
400 West Capitol, Suite 2000
Little Rock, AR 72201
Email: JMckay@fec.net

13

DBrown@fellerssnider.com

/s David L. Ter Molen

David L. Ter Molen

1852792v2/25349-0003

14